UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JAMAR REDMOND,

        Plaintiff,

     v.                                   Case No. 18-C-98

SERGEANT ANDREW MOUNGEY, et al.,

        Defendants.

## DECISION AND ORDER

Plaintiff Jamar Redmond, who is currently serving a state prison sentence at Waupun Correctional Institution, filed this action pursuant to 42 U.S.C. § 1983, alleging that Defendants Sergeant Andrew Moungey, Correctional Officer Jacob Dorn, Correctional Officer Lund, and Nurse Jennifer Kacyon violated his constitutional rights. In particular, Redmond asserts that Sergeant Moungey and Officer Dorn used excessive force against him when they escorted him to his cell; Sergeant Moungey, Officer Dorn, and Nurse Kacyon were deliberately indifferent when they ignored Redmond's need for treatment related to a laceration on his arm; and Officer Dorn and Officer Lund were deliberately indifferent when they failed to protect him from a suicide attempt. Presently before the court is Defendants' motion for summary judgment. Redmond has not responded to the motion for summary judgment, and the time to do so has passed. For the following reasons, Defendants' motion will be granted and the case will be dismissed.

## BACKGROUND

Because Redmond did not respond to the motion for summary judgment, Defendants' proposed findings of fact (ECF No. 24) are deemed admitted for the purposes of summary

judgment. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); Civil L.R. 56(b)(4) ("The Court will deem uncontroverted statements of material fact admitted solely for the purpose of deciding summary judgment."). At all times relevant to this matter, Redmond was housed at Waupun Correctional Institution (WCI).

On November 15, 2017, Officers Lund and Dorn worked second shift as correctional officers in the Restrictive Housing Unit at WCI. At approximately 4:00 p.m., Officer Lund began delivering meal trays to inmates in the Restrictive Housing Unit. Upon arrival at Redmond's cell, Officer Lund asked Redmond if he wanted his meal tray. Redmond responded that he wanted to talk to Officer Lund, but did not say what he wanted to talk about. Because Officer Lund was required to complete passing out meal trays, he told Redmond to speak to the range officer, Officer Burns, who was following behind Officer Lund. When Officer Burns approached Redmond's cell, Redmond showed her an assortment of ten pills. Although Burns told Redmond not to take the pills, Redmond did not comply with the directive and swallowed the pills. Burns then radioed for Sergeant Moungey to assist. Redmond was escorted to the strip cell and a nurse was called to evaluate him. Redmond did not make any statements to Officer Lund or Officer Dorn pertaining to self-harm or pills.

Nurse Kacyon immediately evaluated Redmond after he swallowed the ten pills. In addition to assessing Redmond for a potential medication overdose, she noted Redmond had a superficial scratch to his left forearm. Redmond was then sent to Waupun Memorial Hospital for emergency medical attention for a potential overdose. At the hospital, Redmond was monitored for a few hours, remained asymptomatic, and was discharged to WCI. Upon his return to the

2

prison, which occurred at approximately 10:00 p.m. that same day, Redmond was placed on clinical observation status by the psychological services clinician.

Redmond submitted three offender complaints under the Inmate Complaint Review System relating to his claims. The Institution Complaint Examiner's Office received Offender Complaint WCI-2017-30261 on November 28, 2017, in which Redmond alleged he told staff he was going to overdose and staff did nothing to help him. Complaint Examiner Moon recommended that the complaint be dismissed because she found during her investigation of the complaint that Redmond did not inform staff that he had pills until the moment he took them and that staff promptly addressed the issue. The Reviewing Authority, Warden Foster, agreed with Moon's recommendation and dismissed the complaint on December 9, 2017. Redmond filed an appeal with the Corrections Complaint Examiner's Office on December 26, 2017. The Complaint Examiner concluded the institution's response was reasonable and recommended that the appeal be dismissed. The Office of the Secretary dismissed the appeal on January 16, 2018.

On February 8, 2018, Redmond wrote to Complaint Examiner Moon asking for the original copies of the complaints he submitted in November 2017. He attached what he claimed were carbon copies of two complaints he had filed. Although official complaint forms are not on carbon paper, inmates occasionally make their own carbon copies of documents. Complaint Examiner Moon responded on February 12, 2018, and advised Redmond that the Institution Complaint Examiner's Office never received those complaints and that he would need to submit original complaints, since the office does not accept carbon copies. When an inmate complaint is received by the Institution Complaint Examiner's Office, the Institution Complaint Examiner must review and acknowledge the complaint in writing within five working days of the date of receipt. If Redmond had submitted the two complaints in November 2017, he would have

received a receipt in the mail within five days acknowledging that his complaints were received. If he had not received a receipt, he could have written to the complaint advisor at that time to inquire about his complaints. Redmond's request was submitted approximately three months after the date of the occurrence. Because Redmond did not have the originals, Moon advised him to submit new complaints.

The Institution Complaint Examiner's Office then received Offender Complaint WCI-2018-4498 on February 21, 2018, in which Redmond alleges Sergeant Moungey and Officer Dorn slammed him against the wall and cut his arm on November 15, 2017. Complaint Examiner Moon rejected the complaint on February 21, 2018, because Redmond submitted the complaint well beyond the 14 calendar-day limit from the date of the occurrence and he did not provide good cause to extend the deadline. Redmond did not file a request for review of the rejected complaint.

The Institution Complaint Examiner's Office also received Offender Complaint WCI-2018-4499 on February 21, 2018, in which Redmond complained that Nurse Kacyon did not give him bandages for his arm on November 15, 2017. Complaint Examiner Moon rejected the complaint on February 21, 2018, because the complaint was filed well beyond the 14 calendar-day limit from the date of the occurrence and Redmond did not provide good cause to extend the deadline. Redmond submitted a request for review of the rejected complaint with the reviewing authority, Nursing Coordinator Dittmann, on February 28, 2018. Dittmann found that the complaint was appropriately rejected.

**LEGAL STANDARD**

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the burden of showing that there are no facts to support the

nonmoving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotation marks omitted).

## ANALYSIS

Redmond asserts that Sergeant Moungey and Officer Dorn used excessive force against him when they escorted him to his cell; Sergeant Moungey, Officer Dorn, and Nurse Kacyon were deliberately indifferent when they ignored Redmond's need for treatment related to a laceration on his arm; and Officer Dorn and Officer Lund were deliberately indifferent when they failed to protect him from a suicide attempt. Defendants assert that Redmond failed to exhaust his administrative remedies for his excessive force and medical deliberate indifference claims. They also argue that Redmond has failed to establish that Officers Dorn and Lund failed to protect him from an alleged suicide attempt. The court will address each of Defendants' arguments in turn.

**A. Failure to Exhaust**

Defendants assert that Redmond failed to exhaust his administrative remedies for his Eighth Amendment excessive force and medical deliberate indifference claims. The Prison Litigation Reform Act (PLRA) provides that a prisoner cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C.

§ 1997e(a); *see also Woodford v. Ngo*, 548 U.S. 81, 83 (2006) (holding that the PLRA requires proper exhaustion of administrative remedies). Exhaustion requires that a prisoner comply with the rules applicable to the grievance process at the inmate's institution. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). A plaintiff's failure to properly exhaust each step of the process constitutes a failure to exhaust available administrative remedies. *Id.* The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The purpose of § 1997e(a) is to "permit the prison's administrative process to run its course before litigation begins." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (quoting *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005)); *see also Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). The Seventh Circuit applies a "strict compliance approach to exhaustion" and expects prisoners to adhere to "the specific procedures and deadlines established by the prison's policy." *Dole*, 438 F.3d at 809; *see also Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016).

Wisconsin Administrative Code Chapter DOC 310 governs Wisconsin's inmate complaint review system (ICRS). The ICRS allows inmates to "raise significant issues regarding rules, living conditions, staff actions affecting institution environment, and civil rights complaints." Wis. Admin. Code § DOC 310.08(1). An inmate must file a complaint with the institution complaint examiner (ICE) within 14 calendar days after the occurrence giving rise to the complaint, unless good cause exists to excuse a delay. § DOC 310.09(6). The inmate must file a signed complaint by either depositing it in a locked box designated for inmate complaints or by submitting it to the ICE through institution mail. § DOC 310.09(8). The ICE has the authority to return, investigate, or recommend a decision to an appropriate reviewing authority. § DOC

6

310.07(2)(a)–(c). If a reviewing authority renders a decision, the inmate may appeal that decision to the corrections complaint examiner (CCE) within 10 calendar days. § DOC 310.13(a). After receiving an appeal, the CCE shall issue a written receipt of the appeal to the inmate within five working days, then recommend a decision to the DOC Secretary, who adopts or rejects the recommendation. §§ DOC 310.13(4), DOC 310.14(2). The failure to properly exhaust each step of the grievance process constitutes failure to exhaust available administrative remedies. *Pozo*, 286 F.3d at 1025.

Although Redmond told Moon that he had filed complaints regarding his excessive force and medical deliberate indifference claims in November 2017, it is undisputed that the Institution Complaint Examiner's Office did not actually receive those prisoner complaints until February 2018, nearly three months after the incidents occurred. Because Redmond did not file an inmate complaint within 14 calendar days after the occurrence giving rise to the complaint and did not show good cause for this failure, he did not complete the grievance process as required by § 1997e(a). When the failure to exhaust is the prisoner's fault, his claim must be dismissed. *See Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). Accordingly, the court will grant Defendants' motion for summary judgment with respect to Redmond's Eighth Amendment excessive force and medical deliberate indifference claims.

**B. Failure to Protect from Self-Harm**

Redmond asserts that Officers Dorn and Lund failed to protect him from self-harm. Defendants assert that Redmond never faced a significant risk of objectively serious and imminent harm to his future health or safety and that Dorn and Lund were unaware of a significant likelihood that Redmond would imminently attempt suicide.

Redmond's claim is predicated on the principle adopted by the Supreme Court in *Estelle v. Gamble* that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." 429 U.S. 97, 104 (1976). This principle derives from the fact that "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Id.* at 103; *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Redmond's claim differs from those at issue in *Estelle* and *Farmer*, however, in that the threat to his safety from which he claims Dorn and Lund failed to protect him was himself. Redmond asserts that the officers ignored his threats of self-harm, which resulted in Redmond swallowing an assortment of ten pills.

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. It imposes a duty on prison officials to take reasonable measures to guarantee an inmate's safety and to ensure that inmates receive adequate care. *Farmer*, 511 U.S. at 832. A prison official's "deliberate indifference" to a prisoner's medical needs or to a substantial risk of serious harm violates the Eighth Amendment. *Id.* at 828; *Estelle*, 429 U.S. at 104–05. This does not mean, however, that every claim by a prisoner that he has not received adequate treatment states a violation of the Eighth Amendment. Prison staff certainly have a duty to prevent inmates from causing serious harm to themselves. *Pittman ex rel. Hamilton v. Cty. of Madison, Ill.*, 746 F.3d 766, 775–76 (7th Cir. 2014); *see also Taylor v. Wausau Underwriters Ins. Co.*, 423 F. Supp. 2d 882, 889 (E.D. Wis. 2006). While prison staff are under an obligation to protect inmates from self-harm, "[a] risk of future harm must be 'sure or very likely' to give rise to 'sufficiently imminent dangers' before an official can be liable for ignoring that risk." *Davis-Clair v. Turck*, 714 F. App'x 605, 606 (7th Cir. 2018) (quoting *Baze v. Rees*, 553 U.S. 335, 50 (2008) (Roberts, C.J., plurality opinion)).

8

Redmond has not established that Dorn or Lund recklessly disregarded a significant risk of imminent harm or were aware of facts from which they could infer that a substantial risk of serious harm existed. As an initial matter, Redmond has not presented evidence that he told Dorn he was going to take pills or that Dorn knew Redmond possessed an assortment of pills in his cell. Similarly, although Redmond told Lund that he wanted to talk to him, he did not say what he wanted to talk about. There is no evidence that Lund knew Redmond possessed ten pills or that Redmond notified Lund of his intent to commit self-harm. There is no basis to infer that Dorn or Lund knew Redmond had the means to harm himself or that the risk of future harm was sure or very likely. *See Davis-Clair*, 714 F. App'x at 606. Absent a showing that Dorn and Lund knew of an obvious risk that Redmond would swallow an assortment of pills but failed to help, Redmond's claim fails as a matter of law.

## CONCLUSION

For these reasons, Defendants' motion for summary judgment (ECF No. 18) is **GRANTED** and the case is dismissed. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 15th day of February, 2019.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
